# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CHARLES C. WILLIAMS | : | 3:15-cv-00933 (AWT) |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| HARTFORD POLICE DEPT., | : | |
| EMERY HIGHTOWER, CHERYL GOGINS | : | |
| TERRY WALLER, JENNIFER LOPEZ and | : | |
| A.P. | : | |
| Defendants | : | JANUARY 25, 2016 |

## DEFENDANTS' JOINT MOTION FOR PROTECTIVE ORDER

The defendants, Emery Hightower, Cheryl Gogins, Terry Waller, Kimberly Taylor and

City of Hartford hereby jointly move for a protective order regarding discovery in this matter.

Specifically, the defendants seek the following relief:

1) that all discovery be stayed, including any further discovery related to the requests for admission and requests for production that the plaintiff has already propounded, until such time as the court has ruled on the defendants' motion to dismiss;

2) that with respect to any documents that have been produced already, and with respect to any documents that may be produced in the future, that the court make orders upon Mr. Williams, and, if needed, the Department of Correction, requiring that Mr. Williams keep them in privacy, and that the documents are not distributed to or accessible by third parties, including other inmates or prison employees, and that they are not to be published in any manner, including via the internet;

3) that the court order Mr. Williams to comply with Federal Rule 5.2 regarding privacy protections for filings;

4)    that all references to the victim, A.P. [1] and her children be redacted and that their initials be used in any public filings that the parties make to the court, and that references that are already in the public record be expunged; and

5)    that any and all documents that are currently in any party's possession, in which any person (including the victim, her children and non-parties to this case) may have a reasonable expectation of privacy, including but not limited to medical or psychological records of the victim, and any employment records of the defendants be filed under seal pursuant to Local Rule of Civil Procedure Rule 5(e) in the event that they are required to be filed as exhibits to court documents.

## I.    FACTS AND PROCEDURAL HISTORY

### A.    Allegations of Plaintiff's Complaint & Defendants' Motion to Dismiss

The plaintiff commenced this action with his original complaint, which was filed on June 17, 2015. The plaintiff was given leave to amend the complaint and filed his Amended Complaint on September 16, 2015. (Doc. 42). The plaintiff's Amended Complaint asserts multiple causes of action against multiple parties.

The plaintiff is currently incarcerated at Radgowski Correctional Facility in Uncasville, Connecticut. (Amended Complaint, ¶ 42). The plaintiff's complaint arises out of an underlying State of Connecticut criminal prosecution. Specifically, the plaintiff alleges that he was arrested on charges of "first degree aggravated sexual assault and risk of injury to a minor in the first degree." (Amended Complaint, ¶ 10). In summary, the plaintiff alleges that for a period of time he was in a relationship with the victim of the sexual assault, A.P. and that their relationship

---

[1] The defendant will refer to the victim by her initials or as "the victim" throughout its pleadings pursuant to Conn. Gen. Stat. § 54-86e which provides, "The name and address of the victim of a sexual assault under section 53a-70, 53a-70a, 53a-71, 53a-72a, 53a-72b or 53a-73a, … or family violence, as defined in section 46b-38a and such other identifying information pertaining to such victim as determined by the court, shall be confidential and shall be disclosed only upon order of the Superior Court, except that (1) such information shall be available to the accused in the same manner and time as such information is available to persons accused of other criminal offenses, and (2) if a protective order is issued in a prosecution under any of said sections, the name and address of the victim, in addition to the information contained in and concerning the issuance of such order, shall be entered in the registry of protective orders pursuant to section 51-5c." In this case, the defendants consider A.P. to be both the victim of sexual assault, and of family violence. Although the plaintiff denies having committed a sexual assault, he has, in fact, been convicted of assault and unlawful restraint of A.P.

terminated in 2012 when the plaintiff began a new relationship with another woman and had a child with the other woman. (Amended Complaint, ¶ 11-12). The plaintiff alleges that after their break up, A.P. attempted to take revenge upon him by filing "twelve false police reports" with the Bloomfield Police Department in May 2012, including one report in which A.P. claimed that the plaintiff had burglarized her home. (Amended Complaint, ¶ 13). The plaintiff claims that upon investigation the Bloomfield Police Department eventually concluded that the home invasion had been staged, and that as a result A.P. was arrested for false reporting. (Amended Complaint, ¶ 13).

The plaintiff alleges that several months after their initial break up and after A.P.'s arrest for false reporting, and despite the fact that there was a no contact order in place, he and A.P. again began having consensual sexual relations in January and February of 2013. (Amended Complaint, ¶ 13-14). The plaintiff alleges that in January and February 2013, A.P. requested his assistance in the defense of her false reporting charge. (Amended Complaint, 14-15). The plaintiff claims that he refused A.P.'s request for assistance. He also claims that when A.P. informed him that she was pregnant that he refused to continue in a monogamous relationship with her, gave her money for an abortion and "assumed [it was] over." (Amended Complaint, ¶¶ 15-16).

The plaintiff alleges that on September 23, 2013, A.P. went to the Hartford Police Department where she made a "false complaint against the Plaintiff." (Amended Complaint, ¶10). Specifically, the plaintiff alleges that A.P. reported to the Hartford Police, specifically Detective Cheryl Gogins, that she had been raped by the defendant while her grandchild was in the room on February 14, 2013. (Amended Complaint, ¶ 10). The plaintiff claims that as a result of the allegation that Det. Gogins investigated the claim but that her investigation was

inadequate. The plaintiff claims that Det. Gogins should not have believed A.P. about the alleged rape because of her prior arrest for false reporting in Bloomfield. (Amended Complaint, ¶ 19-21, 22). Additionally, the plaintiff appears to claim that Det. Gogin's investigation may have been improperly influenced by her working relationship with "High Ranking City Officials," specifically Emery Hightower, whom the plaintiff alleges was the "Chief of Police," and Terry Waller, the Deputy Fire Chief. (Amended Complaint, ¶¶ 17-20).

Although the plaintiff claims that Det. Cheryl Gogins "supplied a false statement in her affidavits for arrest warrant applications – for both arrest warrant and search and seizure warrants," his complaint does not actually point to any false statements that Det. Gogins is alleged to have made. (Amended Complaint, ¶ 23). Rather, the plaintiff's complaint points to portions of Det. Gogins' police report or arrest warrant application that report the verbal information that she received from A.P., which information the plaintiff claims was contradicted by or inconsistent with other evidence or information. (Amended Complaint, ¶¶23-25). The plaintiff admits that an application for a warrant for his arrest was presented to Judge Ward, and that Judge Ward issued the arrest warrant, which indicates that Judge Ward made a finding of probable cause for the arrest. The plaintiff also claims that Det. Gogins unreasonably failed to disclose to Judge Ward that A.P. had been arrested for false reporting in relation to the Bloomfield incident. (Amended Complaint, ¶¶ 22-23, 25, 27-28).

With respect to defendant Terry Waller, the plaintiff claims that Mr. Waller was the Deputy Fire Chief for the City of Hartford at the time of the subject events and that he had a personal relationship with co-defendant Angela Pierce. The plaintiff claims after the date of the rape, Mr. Waller called and threatened the plaintiff that if he brought any police complaints against A.P. that he (Mr. Waller) would have the plaintiff "set up by the police and harassed non-

stop." (Amended Complaint, ¶ 17). The plaintiff claims that Mr. Waller contacted defendant Emery Hightower, whom the plaintiff alleges was the "Chief of Police," and that Mr. Waller told Mr. Hightower that he had a situation that he needed help with, specifically that A.P. needed protection from the plaintiff. (Id., at ¶ 18). The plaintiff claims that this phone call from Mr. Waller to Mr. Hightower resulted in Det. Gogins being assigned to A.P.'s case for investigation. (Id., at ¶ 18-19). The plaintiff does not make any other allegations as to how either Mr. Hightower or Mr. Waller were claimed to have been involved in his criminal investigation and eventual prosecution. The plaintiff claims only that Mr. Waller's belief in the truth of A.P.'s allegations was "unreasonable." (Amended Complaint, ¶ 33).

The plaintiff's overriding claim is as follows:

> These defendants supported and assisted [A.P.] with her false complaint. These defendants are being sued in their individual and official capacity because they participated in a false allegation of 1st degree aggr. Sex. Assault, and 1st. degree risk of injury to a minor, and maliciously instituted a criminal proceeding against me for a non-existent crime in violation of --- First, Fourth, Fifth, Sixth, and Fourteenth Amendments… these defendants violated both state and federal Laws and the Plaintiff's United States' Constitutional Rights … the defendants actions and behavior supported and gave [A.P.] "complaint" the credibility to take the direction it went. The defendants' participation, provide an appearance of truthfulness which had "undermined" the outcome of honorable Judge Ward's decision to determine if probable cause existed for the Plaintiff's arrest. The defendants knew "[A.P.]" perjured herself about the "timing, location, and event" of the pregnancy. And failed to intervene. Which "BREACHED" their "Duty of care"… furthermore, Because of the defendant's actions. The plaintiff was publicly labeled in the "newspapers, television, on social media." As one of the most extreme, brutal criminal of the worst kind … which the plaintiff was found to be innocent.

> (Amended Complaint, ¶ 43; errors of spelling, punctuation and grammar in original; ellipses in original).

Although the plaintiff's complaint alleges that he was acquitted of first degree sexual assault, he does not allege that he was acquitted of first degree risk of injury to a minor, or of any other charges that were brought against him.

The plaintiff's Amended Complaint purports to raise the following counts. Count One is brought against all of the defendants and is entitled "False Arrest." This count alleges that the defendant conspired to present the court with a "fabricated application arrest warrant," and to affect an unlawful arrest of the plaintiff. (Amended Complaint, ¶¶ 48-59). The defendant construes this claim as raising a claim of arrest without probable cause in violation of the Fourth Amendment. Count One also appears to raise a <u>Monell</u> claim against the City of Hartford on the basis of this claim. (Amended Complaint, ¶ 59).

Count Two is entitled "Illegal Arrest" and is also brought against all of the defendants, and claims the defendant "illegally arrested [him] for a non-existent crime," and that in doing so the defendants violated his rights to due process, his right to be free from cruel and unusual punishment, and his fourth amendment right against arrest without probable cause.

Count Three is labeled "police misconduct," and does not assert any other factual basis, and claims that the defendants "participated and contributed, and conspired to unlawfully arrest the plaintiff … for a non-existent crime of 'sexual assault' in the first degree." (Amended Complaint, ¶ 61).

Count Four purports to set forth a common law claim of malicious prosecution against all of the defendants. The plaintiff claims that the defendants "initiated a false complaint which instituted a criminal proceeding against the plaintiff for a non-existent crime." (Amended Complaint, ¶ 62).

Court Five purports to set forth a claim for "Obstruction of Justice," and claims that the defendants "mislead judges, and the Hartford Superior Court to proceed in a false criminal proceeding against the 'plaintiff' for a non-existent crime." (Amended Complaint, ¶ 63).

Count Six purports to set forth a common law claim of defamation against all of the defendants. The plaintiff asserts that the defendants injured his reputation "through the false arrest of a non-existent crime and spread that false statement of the plaintiff being a rapist through various state agencies, and social media, and news papers, and publicly arrested the plaintiff 'Charles C. Williams' for a false, fabricated crime." (Amended Complaint, ¶ 64).

Count Seven purports to set forth a common law claim of libel. The plaintiff claims that the defendants Lopez and Gogins "printed and forwarded a sealed warrant to the Hartford Current news paper and published an article of the 'plaintiff' being a suspect in a rape without permission from the Hartford Superior Court to reprint the details of the 'false incident." (Amended Complaint, ¶ 65).

Count Eight is labeled "Retaliation" and asserts that the defendant conspired to affect an unlawful arrest of the plaintiff because he made prior citizen complaints against the police department and A.P. in 2012 and 2013, and because he made complaints to the U.S. Attorney's Office in 2013 regarding alleged misconduct of the Hartford Police Department.

Count Nine is labeled "I.I.E.D." and presumably intends to allege a common law claim of intentional infliction of emotional distress against defendant Kimberly Taylor. Specifically, the plaintiff claims that Kimberly Taylor conducted a biased investigation and failed to inform, warn, remedy or correct "Department Officials" and encouraged their "unlawful behavior" of the Hartford Police Department.

On November 6, 2015, the defendants filed a joint motion to dismiss this case, which is premised upon the Supreme Court's holding in Heck v. Humphrey, 512 U.S. 477 (1994) because the plaintiff was convicted of unlawful restraint in connection with the same February 14, 2013 incident for which he claims he was falsely arrested, and as such there is no cause of action for

false arrest until his conviction has been overturned. (Doc. 97). The plaintiff filed an objection

to the motion on November 25, 2015. (Doc. 101). The court has not yet ruled upon that motion.

B.     <u>A protective order is necessary in this case because of the plaintiff, Charles
       Williams' past criminal convictions, history of stalking and harassing the victim,
       and his attempts at retaliation against law enforcement.</u>

The plaintiff, Charles Williams, has a serious criminal history of stalking, harassing, and

assaulting the victim and her family, and it is the belief of these defendants that the plaintiff has

brought this lawsuit at least in part to obtain the victim's contact information in an attempt to

locate her and continue to harass her from prison. Additionally, it is the defendants' belief that

the plaintiff has brought this action in an attempt to harass them and retaliate against them for

their arrests of him, even though his arrest and convictions were justified. Given the serious

nature of the plaintiff's past behavior, which will be described below, the defendants believe that

the utmost caution should be used in distributing information to the plaintiff.

Mr. Williams has a record of multiple criminal convictions in Connecticut dating back to

1990, and several of his convictions involve the victim at issue in this case. (Exhibit 1, Certified

Criminal History). On August 1, 2008, Hartford Police were dispatched to a Shell Gas Station

by witnesses who called 911 when they heard the victim calling for help. The victim reported to

police that she and Mr. Williams had gotten into an argument when she confronted Mr. Williams

about seeing him with another woman. The victim told Hartford Police that she believed that

Mr. Williams would hit her because he had done so in the past and because he approached her in

an aggressive manner. Mr. Williams was arrested and gave a false name at the time of his arrest.

He was charged with Breach of Peace and Interfering with a Police Investigation. (Exhibit 2,

Hartford Police Department, Incident Report, Case #08-31314, pp. 1-3). Mr. Williams was

ultimately convicted on January 1, 2010, pursuant to a guilty plea of Interfering with an Officer,

and received a sentence of 30 day imprisonment. (Exhibit 1, Certified Criminal History, p. 4, #10).

On or about April 21, 2012, the plaintiff went to A.P.'s home and became upset about the fact that A.P. had bought a car for her daughter. According to the Bloomfield Police Report of the incident, A.P. reported that Mr. Williams had yelled at her, flipped a table over, kicked her television and other furniture, and thrown hard candy at her. According to A.P. the tirade went on for two hours. A.P. also reported that Mr. Williams had said in the past that he would "shoot it out" with police if they tried to arrest him. A.P. reported that she had seen Mr. Williams in possession of a handgun in the past. Bloomfield Police arrested Mr. Williams on charges of Threatening in the Second Degree and Disorderly Conduct. (Exhibit 3, Bloomfield Police Dept., Case #1200007212, p. 1-3). Mr. Williams was taken into custody pursuant to a search warrant on April 25, 2012. This resulted in a criminal case in Hartford Superior Court with Docket No. H14H-CR12-0659230-S. (Exhibit 3, Bloomfield Police Dept., Case #1200007212, p. 1-3). Mr. Williams was ultimately convicted in that case following a guilty plea on October 18, 2012 on charges of Criminal Trespass in the First Degree. He was sentenced to 1 year imprisonment with execution suspended and 18 months' probation. His probation was subsequently violated, and his probation was revoked on or about November 22, 2013. (Exhibit 1, Certified Criminal History, p. 3; Exhibit 4, Judicial Branch Case Detail, H14H-CR12-0659230-S).

On or about June 2, 2012, A.P. made a complaint to Hartford Police, specifically Officer Craig McLennan, regarding Mr. Williams in which she claimed that on June 2, 2012, Mr. Williams drove up to her while she was stopped at a gas station, and rolled down his window and stated that he needed to talk to her because he had left drugs and money in her basement. A.P. stated that she was fearful of Mr. Williams because he had been physically abusive in the past,

and she also stated that there was an active restraining order against him. Officer McLennan checked NCIC, which revealed the protective order with A.P. as the protected person, and which required that Mr. Williams have no contact with A.P. and that he stay at least 100 years away from her. Based upon this investigation, Officer McLennan sought a warrant for Mr. Williams' arrest on the charge of criminal violation of a protective order, which warrant was approved by the State's Attorney and by the court. Mr. Williams was arrested on June 16, 2012 pursuant to the court issued warrant. (Exhibit 5, Internal Affairs Case #12-074, Interdepartmental Memorandum).

Despite the fact that the arrest warrant was approved by the court, Mr. Williams made a citizen's complaint to the Hartford Police Department on or about July 2, 2012 against Officer McLennan, in which he claimed that he had been illegally arrested, and that Officer McLennan had conducted a poor investigation. Mr. Williams' also claimed that Officer McLennan's conduct was "racially motivated" and that he had been "racially profiled." Mr. Williams' complaint was investigated by the Hartford Police Department, and it was found to be without basis, and Officer McLennan was exonerated. (Id. at pp. 5-7).

On February 28, 2013, Mr. Williams went to the victim's apartment and demanded to be let in and demanded to know if she was seeing other men even though they had broken up the previous April. When the victim did not answer, Mr. Williams punched her in the face, breaking her nose. The incident was reported to police by the victim's daughter. The victim initially refused to identify Mr. Williams out of fear of retaliation from repeated past instances of abuse, and the fact that Mr. Williams threatened that he would plant drugs in her apartment and call the police, to get her arrested and her minor children taken away from her. The victim, after working with victim services, ultimately identified her attacker as Mr. Williams. The Hartford

Police applied for an arrest warrant for Mr. Williams on charges of Assault in the Third Degree, and Disorderly Conduct, which warrant was signed by the court on April 16, 2013. (Exhibit 6, Arrest Warrant Application, Police Case Number 2013-6474). Mr. Williams was arrested and taken into custody on the warrant on or about April 17, 2013. Mr. Williams was ultimately convicted for assault in the third degree in relation to this incident pursuant to a guilty plea on January 30, 2014, for which he was sentenced to one year imprisonment. (Exhibit 1, Certified Criminal History, p. 2, #17; Exhibit 7, Judicial Branch Case Detail, Docket #H14H-CR13-0666231-S; State of Connecticut v. Charles Williams, Docket No. HHD-CR13-666231-S, Hearing Transcript, January 30, 2014, pp. 3-4). As a result of his plea and conviction, the court issued a standing criminal protective order in favor of the victim, as well as in favor of her two children, pursuant to which Mr. Williams was to have no contact with the victim or her two children, and was required to stay at least 100 yards away from them at all times. The protective order will remain in effect until December 31, 2099. (Exhibit 8, State of Connecticut v. Charles Williams, Docket No. HHD-CR13-666231-S, Hearing Transcript, January 30, 2014, pp. 9-10).

Approximately two weeks after his arrest on this charge, Mr. Williams filed a citizen's complaint against the defendant, Det. Cheryl Gogins, and non-defendant Det. Philip Fuschino, in retaliation for his arrest claiming that he had been arrested on a "false complaint," and claiming that the arrest was racially motivated. Mr. Williams' complaint claimed that he had been illegally arrested, and that his civil rights had been violated. The Internal Affairs Division investigated the complaint and exonerated both Det. Fuschino and Det. Gogins, finding that the arrest warrant had been prepared based upon facts from the voluntary statement of the victim, and which arrest warrant was approved by Det. Fuschino's supervisor and by a judge of the Superior Court. The Internal Affairs Division determined that the detective's actions were in

compliance both with Hartford Police Department Policy, and State of Connecticut recommendations regarding domestic violence events. (Exhibit 9, Interdepartmental Memorandum, IAD Citizen Complaint, #13-034).

In the criminal case that underlies this civil suit, the victim first reported the rape to the police on or about September 20, 2013, when she reported that she and Mr. Williams had been in a relationship off and on for several years but had broken up in April 2012 due to Mr. William's violence toward her. The victim reported that since the break up Mr. Williams had stalked her, threatened to kill her and her children and had threatened to get her arrested. The victim reported that on February 14, 2013, Mr. Williams came to her house and raped her by threatening her with a knife, and threats of falsifying police reports to have her arrested, which he had previously done. The victim reported that Mr. Williams forced her to perform oral sex upon him, and that he also physically forced her to engage in vaginal-penile intercourse. The victim reported that she was impregnated as a result of the rape and subsequently had an abortion.

After the victim reported the incident, Det. Gogins engaged in a thorough investigation of the rape, including obtaining the victim's medical records (with the victim's authorization) for her diagnosis of pregnancy, and of her subsequent abortion. Det. Gogins also obtained the products of conception from the rape, which were DNA tested by the Department of Emergency Services and Public Protection Division of Scientific Services. The products of conception were found to be a positive DNA match to the plaintiff as the paternal contributor. Based upon this evidence, Det. Gogins prepared an Application for Arrest Warrant on charges of sexual assault in the first degree, and risk of injury to a minor. The warrant was reviewed and signed by a judge of the Connecticut Superior Court on July 20, 2014. (Exhibit 10, Application for Arrest Warrant).

Following his arrest, the prosecution filed a substitute information in which Mr. Williams was charged with two counts of sexual assault in the first degree in violation of Conn. Gen. Stat. § 53a-70(a)(1), and one count of unlawful restraint in the first degree in violation of Conn. Gen. Stat. § 53a-95(a). (Exhibit 11, State of Connecticut v. Charles Williams, Docket. HHD-CR14-0674998-T, Trial Transcript, December 8, 2014, pp. 21-22). During the trial the victim testified that she and Mr. Williams began dating in 2007, and that at some point in their relationship Mr. Williams became emotionally, verbally and physically abusive but that she usually did not call the police. (Exhibit 12, State of Connecticut v. Charles Williams, Docket HHD-CR14-0674998-T, Trial Transcript, December 8, 2014, pp. 42-43). The victim testified to a specific incident that occurred on November 16, 2010, where Mr. Williams arrived at her home at 2:00 a.m., and started arguing with her and accusing her of cheating on him. The victim stated that the argument went on for several hours until she managed to grab Mr. Williams' phone and call his mother, who arrived at the house at about 6:00 a.m. The victim testified that when Mr. Williams' mother arrived, he left the house, slashed two of the tires of the victims' car that was parked in the driveway and then left. (Exhibit 13, State of Connecticut v. Charles Williams, Docket. HHD-CR14-0674998-T, Trial Transcript, December 8, 2014, pp. 45-48).

The victim testified to another incident in April 2012, where Mr. Williams arrived at her house and started arguing with the victim because the victim has given her daughter, who was not Mr. Williams' daughter, a car. During this incident, the victim's newborn grandson was in the house. This incident lasted for two to three hours, during which Mr. Williams pushed over the dining room table, threw the chairs, kicked the television and generally "destroyed" the area. During this incident, Mr. Williams threw hard candies at the victim. The hard candies hit her all over her body and also hit the infant. (Exhibit 14, State of Connecticut v. Charles Williams,

Docket. HHD-CR14-0674998-T, Trial Transcript, December 8, 2014, pp. 49-52).  At that point, one of the victim's daughter's was in the hospital being treated for bone cancer, and the victim decided to terminate her relationship with Mr. Williams.  Id., at p. 52.

The victim testified that after terminating her relationship with Mr. Williams, he became "very upset" and began stalking her.  Id.  The victim testified that Mr. Williams refused to allow the relationship to end, and believed that the victim must have been engaged in another relationship.  Specifically, she testified, "… it's like he thought that because I was ending this relationship with him was because I had to move on to somebody – because I was moved on to somebody else.  He – in his mind, he thought I was cheating on him."  Id., at p. 53.

The victim testified that she sought assistance from Interval House, and that they advised her to move.  Id., at 53-54.  As a result, the victim moved from Bloomfield to Hartford in August 2012.  Id., at 55.  The victim did not tell Mr. Williams that she had moved but he found her and continued to stalk her.  Id., at p. 55-56.  After the move, Mr. Williams began to threaten the victim by stating that he would call the police and make up false reports to get her arrested and have her taken away from her family.  Id., at 56-57.  As a result of Mr. Williams' threats and stalking, the victim stopped calling the police.  She testified:

Q:     All right.  And why did it make you feel different now with this type of behavior on the defendant's part?

A:     For one, I was calling the police.  I called the police.  It didn't stop nothing he did.  It didn't stop him from doing the things that he did.  I went to the people at Interval House.  They told me to move.  I moved.  He found me. I went to – I was going to the court system before with the police and I was telling them this is what he's doing.  Nobody could help me.  Nobody could help me.  No – there was no good answer.  He told me he was going to call the police, make a false report, and have me taken away from my family if I called the police and tell them what he – he was showing up at my house and he wasn't supposed to be there.

Id., at p. 58.

The victim testified that even though she had stopped calling the police, Mr. Williams continued to harass her. She testified that she repeatedly changed her phone number to try to prevent Mr. Williams from contacting her but that did not stop him from trying to contact her. Id., at 59-60. About a week after she changed her phone number, Mr. Williams came to her house in January 2013 and demanded that the victim give him her phone number. The victim testified that Mr. Williams demanded that she have sexual intercourse with him in order to prove that she was not in a relationship with anyone else. The victim testified that she submitted to sexual intercourse with Mr. Williams, even though she did not want anything to do with him on that and other occasions because she felt that she did not have a choice and she just wanted Mr. Williams to leave her alone, and because Mr. Williams threatened her that he would call the police and make false allegations against her. Id., at 61-64.

The victim also testified to the details of the February 14, 2013 rape, which testimony was generally consistent with the information that had been included in the application for arrest warrant. Id., at pp. 65-83. Additionally, during the trial, the state presented a witness named Elon Henry who testified that he was incarcerated with Mr. Williams, and that during the incarceration, Mr. Williams had spoken of his case and had spoken of A.P. (Exhibit 15, State of Connecticut v. Charles Williams, Docket No. HHD-CR14-0674998-T, Trial Transcript, December 11, 2014, pp. 8-18). Mr. Henry testified that Mr. Williams made statements regarding A.P. as follows:

Q:    And what did this defendant say to you?

A:    Exact words?

Q:    What you remember.

A:    Like, this girl got me going through it right now.  I'm a kill this girl, like with my bare hands, and if I don't kill her I'm a get close and I'm a make her give me head for like an hour this time.

(Exhibit 16, <u>State of Connecticut v. Charles Williams</u>, Docket No. HHD-CR14-0674998-T, Trial Transcript, December 11, 2014, p. 17-18).

The plaintiff, Mr. Williams, testified in his own defense at trial and presented an alibi defense.  <u>Id</u>., at pp. 56-71.  Mr. Williams denied making the statements that Mr. Henry had attributed to him.  <u>Id</u>., at 71.  On cross-examination, Mr. Williams claimed that Mr. Henry had gone into his cell and stolen his notes and journal related to the case.  <u>Id</u>., at pp. 134-141. Following deliberations, the jury acquitted the plaintiff of the two counts of sexual assault in the first degree, but convicted him of unlawful restraint. (Exhibit 17, <u>State of Connecticut v. Charles Williams</u>, Docket No. HHD-CR14-0674998-T, Trial Transcript, December 16, 2014, pp. 7-9). Following receipt of the jury's verdict the court addressed the Part B information regarding the allegations that Mr. Williams was a persistent felony offender.  Mr. Williams was put to plea on that issue, and Judge Alexander accepted a plea that Mr. Williams was a persistent felony offender.  <u>Id</u>., at 11.

On or about February 18, 2015, after the conclusion of the sexual assault trial, Mr. Williams made a citizens' complaint against the defendant Det. Gogins and Det. Manuel Pacheco in relation to their investigation of the case, in which he claimed that he had been illegally arrested and that the officers had misrepresented exculpatory information to the court in an arrest warrant application.  The complaint was investigated by the Hartford Police Department, including discussion of the case with the State's Attorney who had prosecuted the matter.  The officer handling the investigation indicated that there was no evidence of misconduct by either detective and recommended that the citizen complaint be administratively

closed on intake. (Exhibit 18, Interdepartmental Memorandum, IAD Citizen Complaint #15-019).

Furthermore, Mr. Williams' harassing and stalking conduct has not been limited to A.P. An incident occurred on or about June 7, 2007, where Mr. Williams is alleged to have stalked and harassed a different ex-girlfriend, which resulted in a warrant on charges of Harassment in the Second Degree and other undisclosed charges being issued on or about June 11, 2007. (Exhibit 19, Bristol Police Dept., Case #01-07-026753). Mr. Williams was arrested on the outstanding warrant on or about February 6, 2009. (Id., at p. 1). Mr. Williams was ultimately convicted on October 29, 2009 on one count of Harassment in the Second Degree, and was sentenced to 90 days imprisonment, execution suspended, and conditional discharge of 1 year. (Exhibit 20, Judicial Branch Case Detail, H17B-CR-09-0040846-S; Exhibit 1, Certified Criminal History, p.3, #12).

Furthermore, in relation to the victim, A.P., shortly after the plaintiff commenced this action, he filed pleadings with the court in which he sought a court order compelling the defendants to provide him with the last known address of both A.P., and of Jennifer Lopez, an employee of Interval House (a shelter for domestic violence victims). (Doc. 11, p. 1).

C.  Plaintiff is currently incarcerated and as such documents in his possession will not be able to be kept confidential.

On January 21, 2016, the undersigned counsel had a telephone conference with Mr. Williams regarding the defendants' proposed protective orders as well as regarding Mr. Williams' motions to compel, which is currently scheduled to be heard by the court on January 27th.[2] Mr. Williams remains incarcerated at Radgowski Correctional Institution. Mr. Williams confirmed in that phone call that he is currently in a dorm-style facility where many inmates

---

[2] The undersigned counsel, Rebecca Harris, intends to request a postponement of that hearing due to an ongoing family emergency to which she must attend.

sleep in the same room.  Mr. Williams stated that he does have a locker where he can keep his personal papers but that others have access to that locker, including staff.  Additionally, based upon our conversation, it did not appear that Mr. Williams had any way while incarcerated to prevent access to the papers by other persons while he is using them.

Although Mr. Williams agreed to some of the defendants' requests, such as agreeing to comply with Federal Rule of Civil Procedure 5.2, and that personal information such as social security numbers and dates of birth may be redacted from documents, Mr. Williams was not in agreement with the other remedies that the defendants seek in this motion for protective order.

## II.    LAW AND ARGUMENT

Federal Rule of Civil Procedure 26(c), provides that a party from whom discovery is sought may move for a protective order.  The rule provides, "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]"  The rule specifically provides that the court may issue orders forbidding the disclosure or discovery, or specifying the terms or timing of discovery, and forbidding inquiry into certain matters.

As the above information makes clear, Mr. Williams' claims in this action are likely without merit, and the defendant has filed a motion to dismiss pursuant to the Supreme Court's decision in Heck v. Humphrey.  That motion remains pending with the court.  Mr. Williams has a long criminal past, he has been adjudged a persistent felony offender, and his past history includes multiple acts of violence, stalking and harassing those who defy him.

Not only has Mr. Williams stalked and harassed more than one past girlfriend, but he also has a pattern of making unsupported complaints against police officers who arrest him.  Indeed, within the Hartford Police Department alone, Mr. Williams has made multiple complaints that he

was "illegally arrested" sometimes alleging that the arrests were racially motivated, for crimes for which he was ultimately convicted. It is the defendants' belief and position that this pattern of unjustified complaints is an attempt to harass and retaliate against the officers for their justified arrests of him, and that the complaints represent an attempt to dissuade officers from continuing to pursue charges against him.

Given Mr. Williams' pattern of past harassment, stalking, violence and retaliation, providing Mr. Williams with any knowledge or information whatsoever about the defendants represents a risk to them and their families of harm from current or future retribution from Mr. Williams. Therefore, the court should order that all discovery be stayed until such time as the court has ruled on the defendants' motion to dismiss. Additionally, in the event that the court denies that request, or in the event that the court eventually denies some or all of the defendants' motion to dismiss, the court should set careful limits upon the information to which Mr. Williams is allowed access, and should issue the protective orders requested by the defendants to ensure that the sensitive information is handled properly.

In the event that the defendants' motion to dismiss is denied, in order to defend themselves against the plaintiff's allegations the defendants will be required to produce the evidence that shows that they had probable cause to arrest the plaintiff. This evidence will include written statements of the victim and other witnesses, medical records of the victim, and the results of a DNA test. Notably, the defendants are in possession of the victim's medical records by virtue of an authorization from the victim, which allowed the defendants to obtain those records <u>for purposes of the criminal case only</u>. The victim did <u>not</u> authorize the defendants to disclose those records to the plaintiff, and the victim has a reasonable expectation of privacy in those records. Nonetheless, Mr. Williams who, upon information and belief, is not permitted

by any court to have any copies of those records, has maintained them, has shared with fellow inmates, according to the trial testimony of Mr. Elon Henry, and has attached them to public documents in this court without redaction.

In addition to evidence that the defendants will need to rely upon, the plaintiff has also sought discovery of information, that is typically not publically disclosed and is of a sensitive, private and confidential nature, including but not limited to training records of Det. Gogins, copies of documents related to Defendant Hightower's "work history within the police [department] in the last six years as far as suspensions, reprimands, disciplinary history, sanctions" and other documents that the defendants have objected to producing in response to plaintiff's requests for production. The defendants undoubtedly have a reasonable expectation of privacy in their personnel and work records, *see*, Conn. Gen. Stat. § 31-128f, and ought not to have to disclose them for any purpose to a convicted felon, who has shown a pattern of retaliation against the people who cross him.

In addition to the danger that Mr. Williams may himself impose, defendants Hightower and Gogins are former and current police officers with more than twenty years service to the Hartford Police Department. Defendant Hightower currently works for the States' Attorney's Office as an inspector in felony cases. There may well be literally hundreds of inmates currently incarcerated, some of whom may be incarcerated with Mr. Williams, who could potentially pose a danger to them. As is indicated above, Mr. Williams has testified at trial that in the past other inmates have stolen his papers and journals. Additionally, Mr. Williams' current situation in prison provides him with no means to keep any discovery documents safe. Additionally, the defendant is not aware of any mechanism within the Dept. of Corrections that would prevent Mr.

Williams from sharing disclosed information, or that would prevent other inmates from accessing it.

Therefore, for the foregoing reasons the defendants respectfully submit that these factors constitute good cause to issue a protective order, and request that the court issue the protective orders indicated above.

**DEFENDANTS,**

Hartford Police Department, Emery Hightower, Cheryl Gogins, in her official capacity and Terry Waller, in his official capacity

By:/s/ Nathalie Feola-Guerrieri
Nathalie Feola-Guerrieri
Senior Assistant Corporation Counsel
550 Main Street, Suite 210
Hartford, CT 06103
Federal Bar No. ct17217
Telephone (860) 757-9700
Facsimile (860) 722-8114
Email: feoln001@hartford.gov

**DEFENDANTS,**

Emery Hightower, in his individual capacity; Cheryl Gogins, in her individual capacity; and Terry Waller in his individual capacity.

By: /s/ Rebecca M. Harris
Rebecca M. Harris, Esq.
Federal Bar ct26669
Crumbie Law Group, LLC
100 Pearl St., 12th Floor
Hartford, CT 06103
Tel. 860-725-0025
Fax: 860-760-0308
Email: rharris@crumbielaw.com

# CERTIFICATION

This is to hereby certify that on January 25, 2016, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

Charles C. Williams
Inmate #189080
Corrigan-Radgowski Correctional Center
986 Norwich-New London Turnpike
Uncasville, CT 06382

/s/ Rebecca M. Harris
Rebecca M. Harris